IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLLEEN M. STROM,<br>        Plaintiff,<br><br>vs<br><br>THOMAS W. CORBETT, in his official capacity<br>as Governor of Pennsylvania, et al.,<br>        Defendants. | Civil Action No. 14-1518<br>Judge Cercone<br>Magistrate Judge Mitchell |

REPORT AND RECOMMENDATION

I.     Recommendation

It is respectfully recommended that the motion to dismiss filed by Defendant Thomas W. Corbett (ECF No. 27) be granted.

II.     Report

Plaintiff, Colleen Strom, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 alleging constitutional challenges to Pennsylvania Rule of Civil Procedure 1910.16-2(b)(2) and its 2011 amendment ("the Rule"). She contends that the Rule singles out custodial recipients of Social Security disability benefits, having their income counted differently from all other parents, including Social Security recipients who are non-custodial, which results in a severe reduction in child support for their children. Specifically, she alleges that the Rule violates the equal protection clause, the due process clause and the supremacy clause of the United States Constitution. She names as defendants Thomas W. Corbett, in his official capacity as the (former) governor of Pennsylvania; Kathleen Kane, in her official capacity as the Attorney General of Pennsylvania; Annette Tierney, in her official capacity as Hearing Officer in the Family Division of the Court of Common Pleas of Allegheny County; Geraldine M. Redic, in her official capacity as the Deputy Administrator of the Domestic Relations Office of Allegheny

County; and Thomas G. Saylor, in his official capacity as the Chief Justice of the Supreme Court of Pennsylvania.

Currently pending before the Court is a motion to dismiss Plaintiff's Amended Complaint, filed by Defendants Corbett and Kane (ECF No. 27). Plaintiff has voluntarily dismissed Kathleen Kane (ECF No. 31), but opposes the dismissal of Governor Corbett (ECF No. 32). For the reasons that follow, the motion should be granted.

Facts

Plaintiff indicates that she is disabled and collects Social Security disability benefits as well as Social Security derivative benefits for her children, based on her disability, her prior work record, and her personal payments into the Social Security program, which are intended under Social Security law for her to support her children. (Am. Compl. ¶ 2.)[1] Under Pennsylvania law, child support is calculated by adding both parents' incomes to find the base child support amount, then that child support amount is calculated by apportioning each parent's share according to his or her percentage of the total income. Pa. R. Civ. P. 1910.16-4. Plaintiff states that, in her case, the father makes 75% of the total combined income. (Am. Compl. ¶ 3.)

Pennsylvania law, specifically due to an amendment added on September 10, 2011, only allows a Social Security recipient to count the children's derivative benefit, earned on their own record, to be counted in their incomes if they are non-custodial, which would essentially allow that disabled person to pay child support from that derivative. (Am. Compl. ¶ 4.) Plaintiff indicates that she is, rather, a disabled Social Security recipient who is the custodial parent and therefore, Pennsylvania law requires that the children's derivative not be counted in her income and be instead subtracted from the total child support order giving the healthy working non-

---

[1] ECF No. 24.

2

custodial parent 80% of the derivative as a credit to his child support obligation as if he were the one providing this amount, thereby severely reducing the child support amount for her children. (Am. Compl. ¶ 5.)

Plaintiff states that her total income is $1372 per month, including $500 in alimony she receives to help with her medical bills that is added to her income and deducted from the non-custodial parent's income. The children's non-custodial healthy working father makes over $72,000 per year, resulting in $3991 per month after alimony is deducted, yet of the $1033 total child support order, because the derivative is largely credited to him, he pays only $389.69 per month, leaving the disabled Plaintiff to make up the difference of $643.31. (Am. Compl. ¶ 6.) Plaintiff notes that she is responsible for more of the total child support order than the non-custodial parent even though he makes 75% of their total combined incomes. (Am. Compl. ¶ 7.)

The derivative for the children is $490, which means that another $153.31 would have to come from her Social Security payment of $872 in order to meet this obligation for the children. (Am. Compl. ¶ 8.) Plaintiff states that, only if she were to relinquish custody of her children could she count the derivative in her income, at which point her child support obligation from the $1033 would be $310 and the healthy working parent making $72,000 per year would have the obligation of $723. (Am. Compl. ¶ 9.)

Plaintiff alleges that Pennsylvania is alone in this law and is the only state that encourages disabled parents to relinquish custody of their children. (Am. Compl. ¶ 10.) She states that, solely because she is disabled, collecting Social Security and has custody of her children, she is responsible for an additional $333 per month to support them, while the non-custodial parent is credited that amount and his child support is reduced, depriving his children. (Am. Compl. ¶ 11.) She alleges that Pennsylvania law lowers the standard of living for children

like hers, not because of a parent's inability to pay but because the state has singled them out to be deprived in a way no other children are. (Am. Compl. ¶ 13.)

Plaintiff alleges that this law has severely affected her and her children in many ways. She states that she has gone through every dime of her share from the equitable distribution during her divorce to help support her children. The money is gone and with two of her three children now having reached the age of 18, although both are in college and are still living with her, the derivative amount, which is the same regardless of how many children a disabled parent has, is being deducted from one child's support order. Plaintiff has been forced to move to public housing at taxpayer's expense. (Am. Compl. ¶ 15.)

Plaintiff notes that Pennsylvania law holds no other recipients of earned government benefits, including veteran's benefits or unemployment benefits, to this standard. Only custodial Social Security recipients are singled out. (Am. Compl. ¶ 25.) She states that disabled custodial parents are disproportionally affected by this rule compared to retired Social Security recipients, therefore the rule targets disabled custodial parents who are a protected class. (Am. Compl. ¶ 26.)

Plaintiff alleges that Pennsylvania holds no legitimate purpose for singling out custodial Social Security recipients and their children in this way. (Am. Compl. ¶ 27.) She notes that there is a "rebuttable presumption" found in Rule 1910.16-1(b) and Rule 1910.16-5 for specific circumstances in which deviations are permitted from the Guidelines, but disregarding Rule 1910.16-2(b)(2) and its amendment is not one of them. (Am. Compl. ¶ 30.) She further notes that the right to appeal a support order is based on a standard of review of abuse of discretion and thus, so long as the Pennsylvania State Guidelines are followed, no claim against the Rule will be entertained. (Am. Compl. ¶ 31.) She contends that the Rule and its amendment are irrational

4

and hold no reasonable basis to justify the inequality of its action. She argues that it cannot survive a constitutional challenge under any level of scrutiny—strict, middle tier or rational basis—because it is not even rationally related to the furtherance of any legitimate government interest. (Am. Compl. ¶¶ 32-33.)

On October 20, 2014, Defendant Annette Tierney, a Hearing Officer in the Family Division of the Court of Common Pleas of Allegheny County, issued a Recommendation, invoking Pennsylvania law, and giving the non-custodial parent (Plaintiff's ex-husband) a large deduction in this child support due to Plaintiff's disability and the Social Security derivative benefits she was receiving to support her children. (Am. Compl. ¶¶ 44-45.) Plaintiff notes that Hearing Officer Tierney stated that she tended to side with Plaintiff on this issue, but that derivations allowed by the guidelines did not permit her to disregard Rule 1910.16-2(b)(2). According to Plaintiff, Hearing Officer Tierney told the non-custodial parent that the law was "wrong" and asked if he would be willing to pay more in support, but he refused and she stated that the matter "was out of her hands and to take it up with the legislature." (Am. Compl. ¶ 46.)

She alleges that Governor Corbett, as the chief executive officer of Pennsylvania, is responsible for the faithful execution of the laws, including the child support law that singles out Social Security recipients who are custodial parents and deprives children of the financial stability of a normal child support order. (Am. Compl. ¶ 41.) She notes that the Social Security Act, 45 C.F.R. § 301.13, requires review of all state plans, including any amendments, by the Governor's office. (Am. Compl. ¶ 42.)

Procedural History

Plaintiff submitted a motion to proceed in forma pauperis on November 5, 2014 and the complaint was filed on November 12, 2014. The original complaint named as defendants only

5

Governor Corbett, Attorney General Kane and Hearing Office Tierney.

On January 23, 2015, Defendants Corbett and Kane filed a motion to dismiss (ECF No. 16) and on February 2, 2015, Defendant Tierney filed a motion to dismiss (ECF No. 17). On February 17, 2015, Plaintiff filed a motion for leave to file an amended complaint and after it was granted her Amended Complaint was filed on February 19, 2015 (ECF No. 24). The motions to dismiss were dismissed without prejudice.

The Amended Complaint adds as defendants Geraldine Redic, the Deputy Administrator of the Domestic Relations Office of Allegheny County; and Thomas G. Saylor, the Chief Justice of the Pennsylvania Supreme Court. Federal question jurisdiction is asserted over the civil rights claims, 28 U.S.C. §§ 1331 and 1343, and the complaint is brought pursuant to 42 U.S.C. § 1983. The Complaint alleges that Rule 1910.16-2(b)(2) violates her rights to equal protection of the laws and due process and that it violates the supremacy clause of the United States Constitution. She seeks a declaration that the rule is unconstitutional and an order enjoining Defendants from enforcing it. She also requests costs of suit, including reasonable attorney fees under 42 U.S.C. § 1988, if any.

On March 12, 2015, Defendants Corbett and Kane again filed a motion to dismiss (ECF No. 27). Plaintiff voluntarily dismissed Defendant Kane (ECF No. 31) and filed her brief in opposition to the motion to dismiss Defendant Corbett on March 30, 2015 (ECF No. 32).

Standard of Review

Governor Corbett cites the standard of review for dismissals for failure to state a claim upon which relief could be granted, Federal Rule of Civil Procedure 12(b)(6). However, because two of his three of his arguments touch upon the Court's subject matter jurisdiction to adjudicate this case, Rule 12(b)(6) does not appear to provide the appropriate standard. See Turner v.

6

Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006) (Rooker-Feldman doctrine deprives federal court of jurisdiction); National Collegiate Athletic Ass'n v. Corbett, 25 F. Supp. 2d 557, 562-63 (M.D. Pa. 2014) (noting lack of consensus among federal courts as to whether Younger abstention is governed by Rule 12(b)(6), Rule 12(b)(1) or some other standard); Christian Action Network v. Maine, 679 F. Supp. 2d 140, 143 n.2 (D. Me. 2010) (observing that Rule 12(b)(6) does not seem apt for Younger abstention because it is in the nature of a defense and depends upon assertions not ordinarily included in a complaint).

Dismissal for lack of subject matter jurisdiction is not appropriate on the ground that a complaint fails to state a claim upon which relief can be granted, but only if the right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1280-81 (3d Cir. 1993) (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974)). "The party invoking federal jurisdiction bears the burden of establishing" that jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The first issue a court must decide in reviewing a Rule 12(b)(1) motion is whether the challenge to the court's subject matter jurisdiction is a facial or factual attack. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff. In reviewing a factual attack, the court may consider evidence outside the pleadings." Gould Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (footnote and citations omitted). "Facial attacks ... contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." Turicentro, S.A. v. American Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citation

7

omitted).

The Supreme Court has issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals recently summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

The Court of Appeals has held that "[c]ourts ruling on Rule 12(b)(6) motions may take judicial notice of public records." Anspach ex rel. Anspach v. City of Phila., 503 F.3d 256, 273

8

n.11 (3d Cir. 2007). Governor Corbett has attached to the motion the decisions of the Court of Common Pleas and Superior Court on Plaintiff's claims (ECF No. 27 Exs. A, B) and these public record may be considered in reviewing the pending motion to dismiss.

Because Plaintiff is proceeding pro se, the Court "must liberally construe [her] pleadings, and … will apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted).

Governor Corbett argues that: 1) he is not a proper defendant, because he does not have the specific authority to enforce the Rule Plaintiff challenges—rather such authority lies with the Pennsylvania Supreme Court; 2) the Court should abstain pursuant to Younger v. Harris, 401 U.S. 37 (1971), because Plaintiff has ongoing state support proceedings in which her claims can be adjudicated; and 3) the Rooker-Feldman doctrine bars her claims because the state courts have already decided them and this Court is not a court of appeals to review such decisions.

Plaintiff responds that: 1) Governor Corbett is a proper defendant because he has direct supervisory authority for all executive agencies which cooperate in the child support program, he has a federal responsibility to review any and all child support rules and amendments and he is tasked with upholding constitutional law and faithfully executing the laws of the Commonwealth; 2) her support proceedings are not ongoing and she is not challenging the specific order entered in October 2014, so Younger abstention does not apply; and 3) she is not asking this Court to review the holdings of the Court of Common Pleas or Superior Court in her support case, so Rooker-Feldman does not apply.

The Rooker-Feldman Doctrine

As summarized by the Supreme Court:

Federal district courts ... are empowered to exercise original, not appellate, jurisdiction. Plaintiffs in Rooker and Feldman had litigated and lost in state court.

9

> Their federal complaints, we observed, essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments. We declared such suits out of bounds, *i.e.*, properly dismissed for want of subject-matter jurisdiction.

Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-84 (2005) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). However, the Court observed that some courts had construed the doctrine "to extend far beyond the counters of the Rooker and Feldman cases." Id. at 283.

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Id. at 284. Thus, when Exxon Mobile brought suit against a Saudi Arabian corporation (SABIC) alleging that SABIC had overcharged the joint venture the parties had formed for sublicenses, the doctrine did not apply to deprive the federal court of subject matter jurisdiction merely because SABIC had preemptively sued Exxon Mobile in state court seeking a declaratory judgment that the royalty charges SABIC had charged the joint venture were proper. Even when the Delaware action reached a conclusion, the federal court was not deprived of jurisdiction:

> Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. The Full Faith and Credit Act, 28 U.S.C. § 1738 ... requires the federal court to "give the same preclusive effect to a state-court judgment as another court of that State would give." Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). Preclusion, of course, is not a jurisdictional matter. See Fed. Rule Civ. Proc. 8(c) (listing res judicata as an affirmative defense). In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court.

Id. at 293 (other citations omitted). Moreover, the Court held, the fact that Exxon Mobile was

10

attempting to litigate in federal court a matter previously litigated in state court did not invoke Rooker-Feldman's bar: "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" Id. (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)).

In this case, Plaintiff is not seeking review in this Court of the judgments that were entered in state court. Rather, she is challenging the constitutionality of a state rule of civil procedure that was applied to her in a state court proceeding. This situation does not invoke Rooker-Feldman. See Adkins v. Rumsfeld, 464 F.3d 456, 460 (4th Cir. 2006) (current and retired service members whose retirement pay was divided in state court proceedings pursuant to the Uniformed Services Former Spouses' Protection Act brought suit in federal court challenging the Act's constitutionality, and the suit was not barred by Rooker-Feldman because an examination of the federal constitutional challenge did not require scrutinizing and invalidating any individual state court judgment), cited in Great W. Min. & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 168-69 (3d Cir. 2010). See also Gray v. Yavil, 513 F. App'x 210, 212 (3d Cir. Feb. 1, 2013) (direct constitutional challenge to Pa. R. Civ. P. 233.1 not subject to dismissal under Rooker-Feldman doctrine). Therefore, the Court has jurisdiction to adjudicate her claims and the Rooker-Feldman doctrine does not apply.

Younger Abstention

Governor Corbett argues that this Court should abstain based upon the doctrine of Younger v. Harris, 401 U.S. 37 (1971), because Plaintiff has ongoing state proceedings in which her claims can be adjudicated. Plaintiff responds that her proceedings are not ongoing, that she is not asking the Court to settle her specific case and that she is not arguing that the October

11

2014 hearing and its specific judgment are the cause of her injury.

The Supreme Court has explained that:

> Federal courts … have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821). Jurisdiction existing, this Court has cautioned, a federal court's "obligation" to hear and decide a case is "virtually unflagging." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Parallel state-court proceedings do not detract from that obligation. See ibid.
>
> In Younger, we recognized a "far-from-novel" exception to this general rule. New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 364, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (NOPSI). The plaintiff in Younger sought federal-court adjudication of the constitutionality of the California Criminal Syndicalism Act. Requesting an injunction against the Act's enforcement, the federal-court plaintiff was at the time the defendant in a pending state criminal prosecution under the Act. In those circumstances, we said, the federal court should decline to enjoin the prosecution, absent bad faith, harassment, or a patently invalid state statute. See 401 U.S., at 53–54, 91 S.Ct. 746. Abstention was in order, we explained, under "the basic doctrine of equity jurisprudence that courts of equity should not act ... to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparably injury if denied equitable relief." Id., at 43–44, 91 S.Ct. 746. "[R]estraining equity jurisdiction within narrow limits," the Court observed, would "prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions." Id., at 44, 91 S.Ct. 746. We explained as well that this doctrine was "reinforced" by the notion of " 'comity,' that is, a proper respect for state functions." Ibid.
>
> We have since applied Younger to bar federal relief in certain civil actions….
>
> More recently, in NOPSI, 491 U.S., at 368, 109 S.Ct. 2506, the Court had occasion to review and restate our Younger jurisprudence. NOPSI addressed and rejected an argument that a federal court should refuse to exercise jurisdiction to review a state council's ratemaking decision. "[O]nly exceptional circumstances," we reaffirmed, "justify a federal court's refusal to decide a case in deference to the States." Ibid. Those "exceptional circumstances" exist, the Court determined after surveying prior decisions, in three types of proceedings. First, Younger precluded federal intrusion into ongoing state criminal prosecutions. See ibid. Second, certain "civil enforcement proceedings" warranted abstention. Ibid. Finally, federal courts refrained from interfering with pending "civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." 491 U.S., at 368, 109 S.Ct. 2506. We have not

12

applied <u>Younger</u> outside these three "exceptional" categories, and today hold, in accord with <u>NOPSI</u>, that they define <u>Younger</u>'s scope.

<u>Sprint Commc'ns, Inc. v. Jacobs</u>, 134 S.Ct. 584, 590-91 (2013).

The Court in <u>Sprint</u> noted that some courts (including the court of appeals in <u>Sprint</u>) had applied a three-part test from <u>Middlesex County Ethics Committee v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982), namely that: 1) there is an ongoing state proceeding, which 2) implicates important state interests, and 3) provides an adequate opportunity to raise federal challenges. <u>Id.</u> at 593. However, these factors "were not dispositive; they were, instead, *additional* factors appropriately considered by the federal court before invoking <u>Younger</u>." <u>Id.</u> The Court concluded as follows:

> Divorced from their quasi-criminal context, the three <u>Middlesex</u> conditions would extend <u>Younger</u> to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest. That result is irreconcilable with our dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the "exception, not the rule." <u>Hawaii Housing Authority v. Midkiff</u>, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (quoting <u>Colorado River</u>, 424 U.S., at 813, 96 S.Ct. 1236). In short, to guide other federal courts, we today clarify and affirm that <u>Younger</u> extends to the three "exceptional circumstances" identified in <u>NOPSI</u>, but no further.

<u>Id.</u> at 593-94.

As the Court of Appeals for the Third Circuit recently explained:

> After <u>Sprint</u>, the threshold requirement for applying <u>Younger</u> abstention is that the state civil enforcement proceeding must be "quasi-criminal" in nature. <u>Sprint</u>, 134 S.Ct. at 593; <u>see also id.</u> at 592 (stating that <u>Younger</u> generally applies only when the state proceeding is "'akin to a criminal prosecution' in 'important respects'"). In evaluating whether a state proceeding is quasi-criminal, we consider the factors set out in <u>Sprint</u>, including whether (1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges. <u>Id.</u> at 592. We also consider whether the State could have alternatively sought to enforce a parallel criminal statute.

13

ACRA Turf Club, LLC v. Zanzuccki, 748 F.3d 127, 138 (3d Cir. 2014).

The state court proceeding to which Plaintiff was a party was not a state criminal proceeding, a state civil enforcement proceeding, or a state civil proceeding involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. Rather, it was a divorce proceeding,[2] the state was not a party at all and the other party in the case was Plaintiff's ex-husband. Therefore, the Middlesex factors are not applicable, Younger abstention is inappropriate and this argument should be rejected.

Proper Party

Governor Corbett argues that he is not a proper party to this action because the Rule of Civil Procedure which Plaintiff challenges was promulgated by the Pennsylvania Supreme Court, not the executive branch.[3] This is not a jurisdictional issue. See, e.g., Brandon E. ex rel. Listenbee v. Reynolds, 201 F.3d 194, 198-99 (3d Cir. 2000) (plaintiffs sued state court judges challenging constitutionality of statute authorizing commitment of minors to involuntary drug and alcohol treatment services, but the judges were only neutral adjudicators with no adverse position to the plaintiffs and were therefore not proper parties to the suit and were dismissed under Rule 12(b)(6)).

Governor Corbett argues that a plaintiff who is challenging the validity of a state statute may typically sue an official charged with its enforcement "only if the official has either

---

[2] It is somewhat surprising that the Attorney General's office (representing Governor Corbett) presents a Younger abstention argument here, given that it recently conceded in another case challenging a state rule where the prior state court proceeding was a divorce action that this argument did not survive the Sprint decision. Healy v. Attorney Gen. Pa., 563 F. App'x 139, 142 n.3 (3d Cir. Apr. 14, 2014).

[3] In addition, Governor Corbett notes that "when officials sued in [their official] capacity in federal court … leave office, their successors automatically assume their roles in the litigation." Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Fed. R. Civ. P. 25(d)(1)). Thus, the current governor of Pennsylvania, Tom Wolf, would be the proper defendant if any governor should remain in the case. The Court need not reach this issue.

enforced, or threatened to enforce, the statute against the plaintiff." 1st Westco Corp. v. School Dist. of Phila., 6 F.3d 108, 113 (3d Cir. 1993) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1209 n.9 (3d Cir. 1988)).  He contends that a government official's "general authority to enforce the laws" is not sufficient to subject that official to suit in an action challenging the law.  Rode, 845 F.2d at 1208.  Similarly, the Ex parte Young exception to Eleventh Amendment immunity, 209 U.S. 123 (1908), requires that the official being sued have some connection to the enforcement of the act.  Id.  Here, however, the Governor has no specific authority to enforce the rule at issue.  Rather, such authority lies with the Pennsylvania Supreme Court.  See Pa. Const., Art. V, § 10(c); 42 Pa. C.S. § 1722.[4]

Governor Corbett notes that Plaintiff names him in his official capacity as "chief executive officer of the Commonwealth" who is "responsible for the faithful execution of the laws of the Commonwealth…."  (Am. Compl. ¶ 41.)  Yet he maintains that the executive branch of government has no role in the promulgation or execution of the Pennsylvania Rules of Civil Procedure, including Rule 1910.16-2(b)(2), and therefore it should not be part of this suit.

Plaintiff argues that:

> Governor Corbett's motion to dismiss rests on the false premise that Plaintiffs' claims against him are based only on his general duty to enforce the law.  In fact, Plaintiffs' claims are based not only on his general duty but also on his direct supervisory responsibility for all executive agencies which cooperate in the child support program, his Federal responsibility to review any and all child support rules and amendments, and because he is tasked with upholding constitutional law and faithfully executing the laws of the commonwealth, and since the State of Pennsylvania employs numerous state agencies to carry out the enforcement of child support orders, it is reasonable and proper to simply name the Pennsylvania State Governor as the defendant in this action rather than numerous agencies and employees.

---

[4] Indeed, on April 29, 2015, the Pennsylvania Supreme Court entered an order amending Rule 1910.16-2, effective July 1, 2015.  Whatever the import of this amendment, it does not alter the analysis regarding whether Governor Corbett is a proper party to this lawsuit.

15

(ECF No. 32 at 7.)

Plaintiff contends that the Pennsylvania State Department of Human Services enforces child support orders, such as the one issued in her case, by collecting support from non-custodial parents and distributing all child support payments through the Pennsylvania State Collection and Disbursement Unit in Harrisburg. She cites 23 Pa. C.S. § 4374 (establishing State disbursement unit), and 23 Pa. C.S. § 4322(a) ("Child and spousal support shall be awarded pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly.")

Governor Corbett accurately points out that the executive branch has no authority to amend or revoke Rule 1910.16-2(b)(2). Article V, § 10(c) states that the Pennsylvania Supreme Court "shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts…" See also 42 Pa. C.S. § 1722(a)(1); Commonwealth v. Brown, 669 A.2d 984, 988 (Pa. Super. 1995) ("the Pennsylvania Constitution gives our supreme court the exclusive power to establish rules of procedure for our judicial system."). Rule 1910.16-2(b)(2) was promulgated by the Pennsylvania Supreme Court pursuant to these provisions and thus the Pennsylvania Supreme Court is a proper defendant to this suit, but the governor is not. See, e.g., Insurance Federation of Pa., Inc. v. Supreme Ct. of Pa., 669 F.2d 112 (3d Cir. 1982) (suit brought against Pa. S.Ct. challenging constitutionality of Pa. R. Civ. P. 238); Winslow v. Stevens, 2015 WL 289998, at *6 (E.D. Pa. Jan. 21, 2015) (noting that a plaintiff "might properly name the Pennsylvania Supreme Court as a defendant in an action challenging the constitutionality of Pa. R. Civ. P. 1042.3"). Even Plaintiff's own citation shows that support orders "shall be awarded pursuant to a Statewide guideline as established by general rule by the Supreme Court."

Plaintiff argues that the Social Security Act, 45 C.F.R. § 301.13, requires review of all

state plans, including any amendments, by the Governor's office. However, that provision indicates that the State plan "consists of written documents furnished by the State to cover its Child Support Enforcement program under title IV–D of the Act." The State plan does not refer to Pennsylvania Rules of Civil Procedure which govern how distributions are counted in individual support orders. The fact that the Governor's office is involved in some manner in child support enforcement programs does not mean that it promulgated the Rule at issue in this case or that it has any authority to modify or vacate the Rule if it is found to be unconstitutional.

In a case in which the plaintiffs brought constitutional challenges to Rule 1.6 of the Pennsylvania Rules of Professional Conduct and Attorney General Kane filed a motion to dismiss, the court stated that:

> the Supreme Court of Pennsylvania, and not the Commonwealth's Attorney General, is tasked with "the power to prescribe general rules for admission to the bar and to practice law." Pa. Const. art. V, § 10(c); see also Beyers v. Richmond, 594 Pa. 654, 937 A.2d 1082, 1091 (Pa. 2007) ("The authority granted to the judiciary in Article V § 10(c) is exclusive, not concurrent."); Office of Disciplinary Counsel v. Marcone, 579 Pa. 1, 855 A.2d 654, 658 n. 3 (Pa. 2004) (noting the Pennsylvania Supreme Court's "inherent and exclusive power to supervise the practice of law in our Commonwealth and the conduct of attorneys who are its officers"). Rule 1.6 of the Rules of Professional Conduct was promulgated by the Supreme Court of Pennsylvania pursuant to Article V, Section 10(c). Because Kane cannot provide plaintiffs with relief from the requirements of Rule 1.6, dismissal of their claims is warranted for lack of standing.

Healy v. Kane, 2013 WL 5803806, at *7 (E.D. Pa. Oct. 29, 2013), aff'd mem., 563 F. App'x 139 (3d Cir. Apr. 14, 2014).[5]

---

[5] Although the Healy case (in which attorneys general were the only defendants) described the issue as one of standing, that doctrine could not apply here because Governor Corbett is arguing only that Plaintiff does not have "standing" to bring her claims against him, not that she cannot bring them at all. Plaintiff's claims cannot be dismissed on the ground that her injury was "the result of the independent action of some third party not before the court," Lujan, 504 U.S. at 560, when the third party, the Pennsylvania Supreme Court which promulgated the Rule, is before the Court. Nor does Plaintiff lack standing on the ground that Governor Corbett cannot redress the injury, because the element inquires only as to whether it is likely that the injury will be

17

Thus, Governor Corbett is not a proper defendant to this case and his motion to dismiss should be granted on this basis.

For these reasons, it is recommended that the motion to dismiss filed by Defendant Thomas W. Corbett (ECF No. 27) be granted.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by June 1, 2015. Any party opposing the objections shall file a response by June 15, 2015. Failure to file timely objections will waive the right of appeal.

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: May 18, 2015

cc: Colleen M. Strom
2361 Tilbury Avenue
Pittsburgh, PA 15217

---

redressed by a favorable decision. Id. at 561.